1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

NANCY JOAN KILGORE,

        Plaintiff,

  vs.

TULARE COUNTY,

        Defendant.

_____/

CASE NO. CV F 10-0031 LJO BAM

**SUMMARY JUDGMENT DECISION**
(Doc. 24.)

## INTRODUCTION

Defendant Tulare County ("County") seeks summary judgment in the absence of evidence to support pro se plaintiff Nancy Joan Kilgore's ("Ms. Kilgore's") claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213.  To oppose summary judgment, Ms. Kilgore generally notes the history of her various conditions which she claims are disabling.  This Court considered the County's summary judgment decision on the record[1] without a hearing.  *See* Local Rule 230(g).  For the reasons discussed below, this Court GRANTS the County summary judgment.

---

[1]      This Court carefully reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, affidavits, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.  Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper.  This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment.  This Court does not rule on evidentiary matters in a summary judgment context, unless otherwise noted.

# BACKGROUND

## Summary

During 2001-2009, the County employed Ms. Kilgore as a social services worker. During much of her County tenure, Ms. Kilgore was placed on leaves of absence due to her physical and mental inability to work. Ms. Kilgore proceeds on her first Amended Complaint ("FAC") to allege purported ADA claims for discrimination, failure to accommodate and harassment. The County pursues summary judgment in that Ms. Kilgore is permanently unable to work with or without reasonable accommodation and thus is not a qualified individual with a disability entitled to ADA protection.

## Ms. Kilgore's Duties

In March 2001, the County hired Ms. Kilgore as a Social Services Worker III ("SSW III"). The SSW III job description effective on Ms. Kilgore's hiring defined the position "[t]o manage a select and difficult caseload involving the determination of social service needs and to develop, implement and monitor treatment plans designed to assist clients." Ms. Kilgore's SSW III duties included performing case studies, investigating family situations involving neglect or abuse, transporting clients to special services such as medical treatment and court appearances, preparing case reports, making home calls by driving to client residences, and vehicle transport of clients.

An SSW III, including Ms. Kilgore, was expected to adjust to changes in workload, to deal with people under emotional distress, and to act effectively in emotional and stressful situations, including emergencies. Physical SSW III requirements included lifting wheelchairs and other assistive devices, helping to transfer clients from sitting to standing, and driving. In her papers, Ms. Kilgore notes that she "was required to clean out Clients [sic] homes, purchase[] food, file, and drive Conserved Client's [sic] to their doctor's appointments."

## Ms. Kilgore's Restrictions And Accommodations

During most of 2004, Ms. Kilgore was off work pursuant to restrictions imposed by ophthalmologist Theresa Poindexter, M.D. ("Dr. Poindexter"). Dr. Poindexter's December 6, 2004 letter noted Ms. Kilgore's needs for "a quiet work area to decrease the amount of stress," "a larger keyboard to make it easier to see the letters while she is typing," "a larger computer screen" to enlarge images, and driving only "during daylight hours, especially in familiar areas." The letter recommended "a voice

2

1   activated computer system to prompt her when filling out forms." Dr. Poindexter's January 26, 2005

2   note released Ms. Kilgore to four six-hour days for a six-week trial.

3       On Ms. Kilgore's January 26, 2005 return to work, she was accommodated with part-time work,

4   voice-activated software, relocation to a less noisy area, office renovations to reduce noise, ear phones,

5   and a microphone to minimize noise distractions. Dr. Poindexter's March 11, 2005 note released Ms.

6   Kilgore to full-time work for a two-month trial and driving in unfamiliar areas on an emergency basis.

7   The note indicated that Dr. Poindexter did not know whether Ms. Kilgore's condition is "permanent or

8   temporary."

9       Ms. Kilgore submitted to the County the September 12, 2005 note of her treating family

10  practitioner Eric N. Sorensen, M.D. ("Dr. Sorensen"), and which stated: "Patient is permanently disable

11  [sic] at this time. Unable to perform daily work duties. Recovering is not known at this present time."

12      After a March 15, 2006 motor vehicle collision, Dr. Sorensen diagnosed Ms. Kilgore with

13  cervical strain and musculoskeletal injuries. Dr. Sorensen precluded her vehicle operation, climbing

14  stairs or ladders, repetitive neck bending, lifting more than 10 pounds, and pushing/pulling more than

15  20 pounds. Dr. Sorensen required Ms. Kilgore's ability to change positions as needed and to change

16  from sitting/standing/stooping every 15 minutes. Ms. Kilgore was accommodated with a leave of

17  absence, temporary assignment to office telephones, no driving, keyboard use limited to two hours, no

18  lap top use in the field, and voice-activated software.

19      In her declaration, County Personnel Services Officer Caroline LeQuieu ("Ms. LeQuieu") states:

20      I personally worked to find a voice-activated software system to accommodate
    Ms. Kilgore's vision and cognitive difficulties. There did not seem to be any satisfactory
21  system compatible with County systems. I contacted a number of people and
    organizations in an effort to accommodate Ms. Kilgore with computer software and
22  adequate training. Nothing ever seemed to work satisfactorily.

23      . . .

24      . . . To accommodate Ms. Kilgore, the walls of a cubicle in a less noisy area of
    the building were extended to eliminate noise. . . . Ms. Kilgore was provided with ear
25  phones and a microphone to help eliminate distracting noises which she claimed made
    it difficult for her to perform her job duties. Ms. Kilgore found, even with these
26  accommodations, that her work space was too noisy. However, there was no other office
    space available.

27

28  / / /

3

In her declaration, former County Disability Management Specialist Tami Tharp[2] notes attempts to accommodate Ms. Kilgore:

> . . . I assisted other County personnel in contacting outside vendors to try to identify a compatible system which Ms. Kilgore could use to perform the essential functions of her job. . . . The larger keyboard and monitor already provided to Ms. Kilgore, as well as the Text Aloud voice-activation program were not working. Ms. Kilgore did not find the voice-activated software provided to her sufficient in terms of pause time to allow her brain to gather her thoughts to respond. . . .
>
> . . .
>
> While employed as a Disability Management Specialist, it was my belief that a significant and good-faith effort was made by the County of Tulare to find accommodations which would enable Nancy Kilgore to return to work. Unfortunately, none of the accommodations seemed to be sufficient for that purpose.

Now retired County Health Human Services Unit Manager Kenneth McCoy ("Mr. McCoy") was Ms. Kilgore's direct supervisor and estimates that a social services worker, such as Ms. Kilgore, devotes 40 percent of her time "in the field." Mr. McCoy declares as to attempts to accommodate Ms. Kilgore:

> . . . I tried to assign cases to Ms. Kilgore which would arguably be in "familiar places," although it was difficult to know what that meant. Moreover, I found that by restricting Ms. Kilgore's cases to "familiar" locations, she was receiving an inordinate low number of case assignments whereas her co-workers were receiving two to three times as many as she was. This was an unacceptable allocation of work.

Ms. Kilgore filed a July 26, 2006 workers' compensation claim for harassment causing "shaking, wobbling, trembling, chest pain, anxiety." Ms. Kilgore was taken off work due to cervical strain and severe anxiety. Ms. Kilgore remained on leave of absence except that she returned to work four hours on April 2, 2007 and one day on January 5, 2009.

**Interactive Process**

The County conducted interactive process meetings to address Ms. Kilgore's work restrictions and potential accommodations. Between March 1, 2004 and January 24, 2008, 15 interactive process meetings were scheduled, and Ms. Kilgore attended twelve of them.

In April 2007, the County retained Vocational Designs, Inc. ("Vocational Designs") to handle interactive process meetings with Ms. Kilgore. Vocational Designs president Steven Koobatian, Ph.D., ("Dr. Koobatian"), is a certified vocational rehabilitation consultant and participated in meetings with

---

[2] Ms. Tharp is a current County Disability Management Coordinator.

4

1   Ms. Kilgore.  Vocational Designs was involved in seven interactive process meetings with Ms. Kilgore

2   and provided interactive  support on five occasions in 2008.  The County continued to consult with Dr.

3   Koobatian during Ms. Kilgore's extended leave of absence.

4          Dr. Koobatian's September 12, 2007 report notes that Ms. Kilgore "feels medically incapable

5   of performing any work," "has applied for Social Security Disability Benefits," and "states that she does

6   not feel capable of performing any type of work."  Dr. Koobatian's December 12, 2007 report attributes

7   Ms. Kilgore to state that "she does not feel medically capable of working at this time" and "does not feel

8   psychologically ready, at this time, to proceed with employment/job accommodations."  Dr. Koobatian's

9   October 13, 2008 report noted that Ms. Kilgore did not "feel medically ready" to return to work on

10  October 20, 2008, pursuant to the County's notice to her.  Dr. Koobatian's January 24, 2008 report notes

11  that Dr. Sorensen "has completely precluded Ms. Kilgore from operating a motor vehicle" due to her

12  "anxiety and stress" related to driving.

13                            **Alleged Disability Harassment**

14         Ms. Kilgore claims that she was harassed based on her disability.  Ms. Kilgore points to the

15  County's July 2, 2007 small claims court action against her to reimburse the County for wage

16  overpayments.

17         Nancy Woods, a paralegal with the County Counsel's Office, initiated the small claims action

18  against Ms. Kilgore and declares that the County's practice is "to seek a judgment preserving the right

19  to reimbursement for wage or other overpayments to County employees, where the employee was not

20  currently working and not amendable to payroll deductions."  Ms. Woods further declares that after she

21  had learned that Ms. Kilgore had signed a repayment agreement, Ms. Woods dropped the County's small

22  claims action.  Ms. Woods declares that the sole purpose of the small claims action was to preserve "a

23  judgment against an employee who was not working and not subject to payroll deductions" and that she

24  lacked knowledge "of who Ms. Kilgore was, or that she had a disability."

25         Ms. Kilgore further claims that she was harassed when the Tulare County Deferred

26  Compensation Plan Committee on May 21, 2008 denied her hardship withdrawal for insufficient

27  documentation to meet Internal Revenue Service requirements.  Ms. Kilgore resubmitted her request

28  which was approved on June 16, 2008.

**Ms. Kilgore's Disability Retirement**

Ms. Kilgore submitted to the County her April 16, 2009 disability retirement application based on Dr. Sorensen's February 11, 2009 conclusion that Ms. Kilgore "is permanently disabled and not able to return to work." The County points to Ms. Kilgore's response in a disability retirement questionnaire that she could not "tolerate stressful situations due to severe anxiety." In response to a question asking Ms. Kilgore to identify accommodations, Ms. Kilgore responded: "Job is stressful and requires someone who is not suffering from anxiety to perform it. Therefore the answer is no there are no accommodations that would apply."

Ms. Kilgore was granted disability retirement, effective April 9, 2009. During her tenure, Ms. Kilgore was neither demoted, denied a raise or promotion, nor disciplined with adverse consequences.

**Ms. Kilgore's Claims**

Ms. Kilgore's FAC fails to allege separate claims and, as the County notes, "is reasonably interpreted as stating causes of action for disability discrimination, failure to accommodate and harassment on account of disability under the ADA." The FAC alleges that:

1. "[M]any required duties . . . were stressful for plaintiff to perform without reasonable accommodations";

2. "Defendant ignored medical information provided by Plaintiff's doctors regarding quiet workplace, driving restrictions, lifting, and working on the computer";

3. "[D]efendant did not reasonably accommodate the plaintiff, with training; quite [sic] work area, and driving in her familiar areas"; and

4. "The plaintiff suffered mentally and physically by the defendant's lack of accommodation, segregation and hostile work environment."

The FAC seeks "relief equal to the present value of Plaintiff's annual salary from January 1, 2007 through age 65, when Plaintiff would expect to retire, August 13, 2018, or $400,000, as well as the present value of work related medical retirement benefits to an assumed age of 80."

**DISCUSSION**

**Summary Judgment Standards**

The County seeks summary judgment on ADA-sounding claims of discrimination, harassment

6

1   and failure to accommodate given that Ms. Kilgore could not perform essential job functions with or

2   without reasonable accommodation.  The County argues that Ms. Kilgore was offered reasonable

3   accommodations, "none of which was sufficient to enable her to perform the essential functions of her

4   job."

5       F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense

6   – or the part of each claim or defense – on which summary judgment is sought."  "A district court may

7   dispose of a particular claim or defense by summary judgment when one of the parties is entitled to

8   judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st

9   Cir. 1999).

10      Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any

11  material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita

12  Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv.,

13  Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary

14  judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need

15  for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers

16  v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

17      On summary judgment, a court must decide whether there is a "genuine issue as to any material

18  fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(a), (c); *Covey

19  v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*,

20  398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82

21  S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.

22  1984).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

23  inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for

24  summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

25  S.Ct. 2505 (1986)

26      The evidence of the party opposing summary judgment is to be believed and all reasonable

27  inferences that may be drawn from the facts before the court must be drawn in favor of the opposing

28  party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The

1  inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or

2  whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-

3  252, 106 S.Ct. 2505.

4          To carry its burden of production on summary judgment, a moving party "must either produce

5  evidence negating an essential element of the nonmoving party's claim or defense or show that the

6  nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of

7  persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th

8  Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to

9  prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case");

10  *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).   A

11  "complete failure of proof concerning an essential element of the nonmoving party's case necessarily

12  renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v.*

13  *Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

14          "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

15  court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech*

16  *Gays*, 895 F.2d at 574.   "As to materiality, the substantive law will identify which facts are material.

17  Only disputes over facts that might affect the outcome of the suit under the governing law will properly

18  preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

19          "If a moving party fails to carry its initial burden of production, the nonmoving party has no

20  obligation to produce anything, even if the nonmoving party would have the ultimate burden of

21  persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

22  "If, however, a moving party carries its burden of production, the nonmoving party must produce

23  evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

24  at 574.   "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

25  fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

26  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry

27  of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

28  make the showing sufficient to establish the existence of an element essential to that party's case, and

1    on which that party will bear the burden of proof at trial.")

2        "But if the nonmoving party produces enough evidence to create a genuine issue of material fact,

3    the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322,

4    106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough

5    'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp.*

6    *v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-

7    289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the

8    plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

9        To oppose summary judgment, Ms. Kilgore offers no meaningful evidence to support her claims.

10   Ms. Kilgore relies on sweeping generalities that she "a is physically, learning, & visually disabled

11   individual" who suffered discrimination and harassment. Ms. Kilgore provides her affidavit and those

12   of former coworkers and her son which essentially discuss her symptoms and inability to accommodate

13   them. As such, Ms. Kilgore fails to raise factual issues to survive summary judgment.

14                    **Prima Facie Case Of Disability Discrimination**

15       The County challenges Ms. Kilgore's ability to establish a prima facie case of disability

16   discrimination.

17       The ADA prohibits an employer from discriminating "against a qualified individual on the basis

18   of disability." 42 U.S.C. § 12112(a). To prevail on an employment discrimination claim under the ADA,

19   a plaintiff must establish that:

20        1.    Plaintiff is a disabled person within the meaning of the ADA;

21        2.    Plaintiff is qualified, that is, with or without reasonable accommodation plaintiff is able

22              to perform essential job functions; and

23        3.    The employer took adverse employment action because of plaintiff's disability.

24   *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

25                        **Qualified Individual With A Disability**

26       The County argues that Ms. Kilgore is not a qualified individual with a disability.

27       "Only a 'qualified individual with a disability' may state a claim for discrimination." *Kennedy*,

28   90 F.3d at 1480. The ADA defines "qualified individual with a disability" as an "individual with a

1   disability who, with or without reasonable accommodation, can perform the essential functions of the

2   employment position that such individual holds or desires." 42 U.S.C. § 12111(8).    "Essential

3   functions" are "fundamental job duties of the employment position . . . not includ[ing] the marginal

4   functions of the position." 29 C.F.R. § 1630.2(n)(1).

5          The ADA defines a disability to include "a physical or mental impairment that substantially

6   limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).  ADA regulations

7   define a "qualified" individual with a disability as an individual who (1) "satisfies the requisite skill,

8   experience, education and other job-related requirements of the employment position such individual

9   holds or desires";  and (2) who "with or without reasonable accommodation, can perform the essential

10  functions of such position." 29 C.F.R. § 1630.2(m).

11         "A plaintiff bears the burden of demonstrating that she can perform the essential functions of her

12  job with or without reasonable accommodation." *Kennedy*, 90 F.3d at 1481.  "If a disabled person

13  cannot perform a job's 'essential functions' (even with a reasonable accommodation), then the ADA's

14  employment protections do not apply." *Cripe v. City of San Jose*, 261 F.3d 877, 884-885 (9th Cir.2001).

15         The County identifies the primary issue as whether Ms. Kilgore could perform all essential job

16  functions with or without accommodation.  The County does not dispute Ms. Kilgore's "numerous

17  disabling physical and mental conditions" given that Ms. Kilgore's physicians found Ms. Kilgore

18  "permanently disabled and unable to return to work."  The County points to Ms. Kilgore's inability to

19  perform essential functions, including driving, transporting clients, making home visits, availability

20  during emergencies, dealing with stressful situations, and handling stress.  The County notes that Ms.

21  Kilgore's present, not future, ability to perform essential functions is determinative.

22         The County is correct that Ms. Kilgore is not a qualified individual subject to ADA protection.

23  The record reveals that with or without reasonable accommodation, Ms. Kilgore is unable to perform

24  essential SSW III functions.  In her papers, Ms. Kilgore admits as much: "I am a disorganized, disabled,

25  anxious person who can, at this point, hardly hold a thought.  I am in extreme pain and I would love

26  nothing more than to give up."  Ms. Kilgore offers nothing to suggest even remotely her ability to

27  perform essential functions with or without reasonable accommodation.  In short, Ms. Kilgore admits,

28  and the record demonstrates, that Ms. Kilgore is unable to work as an SSW III, especially considering

that she receives disability retirement benefits.

### Adverse Employment Action

Turning to the adverse employment action prong of a disability discrimination claim, the County identifies objectionable adverse action to include failure to hire, termination, demotion, improperly classifying a disabled employee to thwart opportunities, requiring a probationary period for only persons with disabilities, and use of administrative standards or criteria that discriminate based on disability. The County argues that Ms. Kilgore suffered no adverse employment action and in turn "no disparate treatment on account of her disability."

The "ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation – a motivating factor standard." *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005). "[C]ausation is one of the explicitly articulated elements of a prima facie case of disparate treatment disability discrimination." *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033, n. 5 (7th Cir. 1999). "To be a motivating factor, then, the forbidden criterion must be a significant reason for the employer's action. It must make such a difference in the outcome of events that it can fairly be characterized as the catalyst which prompted the employer to take the adverse employment action, and a factor without which the employer would not have acted." *Foster*, 168 F.3d at 1033-1034.

The County points to the absence of evidence of a causal connection between Ms. Kilgore's disability and alleged discrimination. The County emphasizes that Ms. Kilgore was never terminated, denied a raise or promotion, or disciplined with adverse consequences. The County concludes that Ms. Kilgore fails to present evidence that she was subjected to adverse employment action.

Ms. Kilgore claims as adverse employment action "undeserved job reviews and job reviews that would not let the Plaintiff be promoted."

The record lacks evidence of Ms. Kilgore's adverse employment action motivated by her disability or accommodation request. There is no evidence that Ms. Kilgore was terminated, denied a raise or promotion, or disciplined due to her disability or accommodation requests. Ms. Kilgore identifies no specific job reviews to establish adverse employment action. Ms. Kilgore fails to raise factual issues as to adverse employment.

### Disability-Based Harassment

The County challenges as unavailable "a claim for hostile work environment harassment on account of disability" to violate the ADA.  The County points to *Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003), where the Ninth Circuit Court of Appeals explained: "Our court has not yet held that such a claim exists, let alone what its source in the statute might be. We decline to do so here, but nevertheless note that § 12112(a)'s prohibition of employment discrimination against the disabled would appear to lend support to [the] argument that § 503(b) of the ADA gives rise to something other than a Title VII-style 'hostile environment' claim."

The County attributes Mr. Kilgore to equate accommodation efforts as "hostile work environment harassment."  The County continues that if the Ninth Circuit recognized a disability-based harassment claim, Mr. Kilgore would need to establish that:

    1.    She belongs to a protected group;

    2.    She was subjected to unwelcome harassment;

    3.    The harassment complained of was based on her disability or disabilities;

    4.    The harassment complained of affected a term, condition, or privilege of employment; and

    5.    The County knew or should have known of the harassment and failed to take prompt, remedial action.

*Flowers v. Southern Regional Physician Services Inc.*, 247 F.3d 229, 235-236 (5th Cir. 2001).

"Moreover, the disability-based harassment must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Flowers*, 247 F.3d at 236.

The County argues that the record reveals only accommodation efforts, not disability-based harassment.  "A public agency may require reasonable evidence of a disability before providing accommodations." *Vinson v. Thomas*, 288 F.3d 1145, 1153 (9th Cir. 2002).  The County explains that Equal Employment Opportunity Commission ("EEOC") guidelines require employee documentation to substantiate a need for accommodation, to specify functional limitations, and to be from a health care professional with required expertise.  Moreover, the ADA does not prohibit an employee to undergo a requested medical examination when the examination is "job-related and consistent with business

necessity." *Yin v. State of California*, 95 F.3d 864, 868 (9th Cir. 1996); 42 U.S.C. § 12112(d)(4)(B).  As such, the County concludes that Ms. Kilgore lacks actionable claims based on requests for medical records, physician notes, and a fitness examination.

The County further challenges as disability harassment its small claims action seeking overpayment reimbursement in the absence of evidence that the action addressed Ms. Kilgore's disability.  The County points to its consistent practice to secure a judgment to preserve its right to reimbursement and paralegal Ms. Woods' lack of knowledge that Ms. Kilgore had signed a reimbursement agreement.  The County disputes that the County Deferred Compensation Plan Committee's denial of a hardship withdrawal qualifies as harassment in that Ms. Kilgore provided insufficient documentation and obtained approval on resubmission.  The County further points to the lack of severe or pervasive conduct affecting the terms, conditions or privileges of Ms. Kilgore's employment based on disability.

The County raises valid, unchallenged points.  The Ninth Circuit does not recognize a hostile work environment harassment claim based on disability under the ADA.  Moreover, the record lacks evidence to raise factual issues that the County harassed Ms. Kilgore in connection with her disability and accommodation requests.  The record reveals Ms. Kilgore's myriad conditions and County attempts to address them.  The record does not reveal facts to infer severe and pervasive harassment arising from Ms. Kilgore's disability and accommodation requests.  Ms. Kilgore's ultimate dissatisfaction does not amount to hostile work environment harassment.

## Reasonable Accommodation

The County argues that the undisputed evidence reveals that the County provided Ms. Kilgore "reasonable accommodation as required by law."

ADA discrimination arises by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(5)(A).

A plaintiff's prima facie burden includes "showing the existence of a reasonable accommodation. . . . In order to be reasonable, an accommodation cannot be merely hypothetical. As part

1   of his or her prima facie case, the plaintiff must show the existence of a position that he or she could

2   perform either with or without specific reasonable accommodation." *Barnett v. U.S. Air, Inc.*, 157 F.3d

3   744, 749 (9th Cir. 1998). A plaintiff "has the burden of showing the existence of a reasonable

4   accommodation that would have enabled him to perform the essential functions of an available job."

5   *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006). To avoid summary judgment, a plaintiff

6   "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of

7   cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)

8          The County notes Ms. Kilgore's lack of "specific evidence of any accommodation which would

9   have allowed her to continue to work." The County points to Ms. Kilgore's substantial work

10  restrictions, "affecting physical and mental abilities to perform the job." The County challenges Ms.

11  Kilgore's ability to demonstrate a reasonable accommodation to enable her to work in stressful

12  situations, especially given her driving restriction and vision, stress and musculoskeletal impairments

13  which limited her working only mere hours during 2006-2009.

14         The County continues that accommodations of numerous leaves of absence, reduced work hours,

15  specialized computer equipment, reassignment of work duties and relocation to a quieter work space

16  were ineffective. The County notes that limiting Ms. Kilgore's assignments to familiar geographic areas

17  resulted in a disproportionate caseload for other County social services workers. The County argues that

18  it fulfilled its accommodation responsibilities and that Ms. Kilgore lacks grounds to support that the

19  County failed to reasonably accommodate her.

20         Although a reasonable accommodation may include job restructuring, 42 U.S.C. § 12111(9)(B),

21  "[t]he law does not require an employer to accommodate a disability by foregoing an essential function

22  of the position or by reallocating essential functions to make other workers' jobs more onerous." *Kvorjak*

23  *v. Maine*, 259 F.3d 48, 57 (1st Cir. 2001) (internal citation and quotation marks omitted); *see Larkins v.*

24  *CIBS Vision Corp.*, 858 F.Supp. 1572, 1583 (N.D. Ga. 1994) (ADA does not require employer "to

25  eliminate an essential function" of a position). The "ADA does not require an employer to relieve the

26  employee of any essential functions of the job, modify the actual duties, or reassign existing employees

27  or hire new employees to perform those duties." *Robertson v. Neuromedical Center*, 161 F.3d 292, 295

28  (5th Cir. 1998). The ADA "does not require an employer to transfer from the disabled employee any of

14

the essential functions of his job." *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir.1997). "The employer is not obligated to choose the best accommodation or the accommodation the employee seeks." *Hanson v. Lucky Stores, Inc.,* 74 Cal.App.4th 215, 228, 87 Cal.Rptr.2d 487 (1999) (ADA claim).

"Unpaid medical leave may be a reasonable accommodation under the ADA. . . . Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999). However, an employer need not provide an indefinite leave of absence:

> Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question. . . . [R]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected.

*Myers v. Hose*, 50 F.3d 278, 283 (4th Cir.1995).

Plaintiff ignores her requirement to raise factual issues as to the existence of a position which she could perform with or without a reasonable accommodation. The record reveals that the County attempted accommodations and that Ms. Kilgore remained unable to fulfill SSW III duties. The County afforded Ms. Kilgore many lengthy leaves of absence. The record reveals that accommodations for Ms. Kilgore placed a disproportionate burden on other County social services workers. Ms. Kilgore points to no available position which she could perform with or without a reasonable accommodation.

**Interactive Process**

The County contends that it fulfilled in good faith its interactive process obligations to accommodate Ms. Kilgore. The County points to many interactive process meetings with Ms. Kilgore and notes that no accommodations enabled Ms. Kilgore to perform essential job functions, despite the County's efforts.

In *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1137-1138 (9th Cir. 2001), the Ninth Circuit addressed an employer's interactive process obligations:

> Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. *Barnett*

*v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir.2000). "An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." *Id.* at 1115. The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. *Id.* at 1114-15; *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996) ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith."). Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. *Barnett*, 228 F.3d at 1116.

There is no evidence that the County engaged in the interactive process in bad faith. Ms. Kilgore points to no evidence to raise an inference of the County's bad faith. Ms. Kilgore's papers merely reflect her dissatisfaction and apparent disappointment in her inability to perform her job.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.     GRANTS the County summary judgment;

2.     VACATES the June 26, 2012 pretrial conference and August 7, 2012 trial; and

3.     DIRECTS the clerk to enter judgment in favor of Tulare County and against plaintiff Nancy Joan Kilgore and to close this action.

IT IS SO ORDERED.

**Dated:     February 13, 2012**             /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE

16